UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JOSEPH DRAGO,**

    Petitioner,

v.                                          Case No. 8:21-cv-865-MSS-SPF

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    Respondent.
_____/

**O R D E R**

Drago petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges (1) his placement on a second term of conditional release by the Florida Commission on Offender Review and (2) the extension of his sentence's maximum expiration date by the Florida Department of Corrections. (Doc. 1) After reviewing the petition, the Commission's response (Doc. 14), the Department of Corrections' response (Doc. 17), the state court record (Docs. 14 and 27), and Drago's reply (Doc. 23), the Court **DENIES** the petition.

**PROCEDURAL HISTORY**

In 1991, a jury found Drago guilty of robbery and Drago pled guilty to grand theft. The state court sentenced Drago to thirty years in prison for the robbery and a concurrent ten years in prison for the grand theft. (Doc. 14-2 at 10, 12, 16, 18)

In 2009, the Florida Parole Commission placed Drago on conditional release (Doc. 14-3 at 3), and Drago agreed to comply with standard conditions while on release. (Doc. 14-3 at 9–13) The Commission set his maximum sentence expiration date at January 8, 2021. (Doc. 14-3 at 2–3)

1

In 2010, the Commission issued a warrant for Drago's arrest for violating the conditions of his release, alleging that he possessed cocaine and roxycodone, absconded, and resisted lawful arrest. (Docs. 14-4 at 10–11 and 14-5 at 2) After Drago waived his right to a hearing (Doc. 14-5 at 3–4), the Commission revoked the conditional release, returned Drago to prison, and denied him the award of credit while on conditional release. (Doc. 14-6 at 2)[1]

In 2017, the Florida Commission on Offender Review[2] placed Drago on conditional release a second time (Doc. 14-7 at 4), and Drago agreed to comply with standard conditions while on release. (Doc. 14-7 at 5–8) The Commission set his maximum sentence expiration date at December 8, 2021. (Doc. 14-7 at 2–3)

In 2018, the Commission issued a warrant for Drago's arrest for violating the conditions of his release, alleging that he traveled to South Carolina without permission, engaged in disorderly conduct, and possessed drug paraphernalia. (Docs. 14-8 at 4 and 14-9 at 2) At a violation hearing, the Commission found Drago willfully violated substantial conditions of his release (Doc. 14-9 at 3–8), revoked the conditional release, returned Drago to prison, and denied him the award of credit while on conditional release. (Doc. 14-10 at 2)

In 2021, the Commission placed Drago on conditional release a third time (Doc. 14-11 at 4), and Drago agreed to comply with standard conditions while on release. (Doc. 14-11 at 5–7) The Commission set his maximum sentence expiration date at November 7, 2022. (Doc. 14-11 at 2–3) Drago presently remains on conditional release.

---

[1] Drago petitioned for a writ of habeas corpus challenging this order of revocation in federal court. Judge James Moody denied relief. *Drago v. Sec'y, Fla. Dep't Corrs.*, No. 8:13-cv-2269-JSM-AEP, 2014 WL 325662 (M.D. Fla. Jan. 29, 2014).

[2] In 2014, the Florida legislature renamed the parole commission the Florida Commission on Offender Review. § 20.32(1), Fla. Stat.

2

After the Commission's second revocation of conditional release, Drago filed several extraordinary writ petitions in state court (Docs. 14-12 at 3–30, 14-15 at 3–13, 30–43, 14-18 at 3–10, and 27-2 at 2–15), and the state court denied relief. (Docs. 14-14 at 2–19, 14-16 at 2–4, 14-19 at 2–7, and 27-14 at 2–4) Drago appealed, and the state appellate court affirmed. (Docs. 14-26 at 2 and 27-26 at 2) Drago's federal petition follows.

The Court construes the petition challenging a decision by the Florida Commission on Offender Review as a petition for a writ of habeas corpus under 28 U.S.C. § 2241 "governed by and subject to the rules and restrictions found in Section 2254." *Peoples v. Chatman*, 393 F.3d 1352, 1353 (11th Cir. 2004) (citing *Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003)).

## JURISDICTION

The Department of Corrections asserts that Drago's petition is an unauthorized successive petition. (Doc. 17 at 15–21) Drago filed an earlier petition for a writ of habeas corpus, raised similar claims, and challenged the same state court judgment. *Drago v. Sec'y, Fla. Dep't Corrs.*, No. 8:13-cv-2269-JSM-AEP, 2014 WL 325662 (M.D. Fla. Jan. 29, 2014).

"[B]efore a petitioner may file a second or successive § 2254 habeas petition, the petitioner first must obtain an order from [the court of appeals] authorizing the district court to consider the petition." *Osbourne v. Sec'y, Fla. Dep't Corrs.*, 968 F.3d 1261, 1264 (11th Cir. 2020) (citing 28 U.S.C. § 2244(b)(3)(A)). Without authorization from the court of appeals, the district court lacks jurisdiction to rule on the petition. *Osbourne*, 968 F.3d at 1264.

"However, the phrase second or successive is not self-defining and it does not refer to all habeas petitions filed second or successively in time." *Boyd v. United States*, 754 F.3d 1298, 1301 (11th Cir. 2014). "[T]he bar on second or successive motions applies when, for example, a petitioner could have raised his or her claim for relief in an earlier filed motion, but without

3

a legitimate excuse, failed to do so." *Boyd*, 754 F.3d at 1301. "[W]hen a petitioner raises a claim that could not have been raised in a prior habeas petition, courts have forgone a literal reading of 'second or successive.'" *Stewart v. United States*, 646 F.3d 856, 860 (11th Cir. 2011). "'[C]laims based on a factual predicate not previously discoverable are successive,' but '[i]f . . . the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.'" *Stewart*, 646 F.3d at 863 (quoting *Leal Garcia v. Quarterman*, 573 F.3d 214, 222 (5th Cir. 2009)).

Drago filed his first federal petition after the Florida Parole Commission revoked his conditional release in 2010. *Drago*, 2014 WL 325662 at *1. After the federal court denied Drago's first petition in 2014, the Florida Commission on Offender Review placed Drago on conditional release a second time, revoked his conditional release a second time, and placed him on conditional release a third time. (Docs. 14-10 at 2, 14-11 at 4, and 14-7 at 4) In his second federal petition, Drago challenges both his placement on conditional release a second time in 2017 and the extension of his maximum sentence expiration date in 2017 and 2021. (Doc. 1 at 6–9, 16–18)

Because Drago's claims in his second federal petition did not ripen until after the federal court denied his first federal petition, the second petition in this case is not an unauthorized second or successive petition. *Accord Medberry*, 351 F.3d at 1062 ("We agree with the decisions issued by many of our sister circuits that a petition challenging such disciplinary proceedings would not be second or successive where the claim could not have been raised in an earlier petition and does not otherwise constitute an abuse of the writ.").

4

## STANDARDS OF REVIEW

**AEDPA**

Because Drago filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

5

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The state appellate court denied Drago relief in a decision without a written opinion. (Doc. 14-26 at 2–3) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The post-conviction court provided reasons for the denial of the claims in a written order. (Doc. 14-19 at 6–7)

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005);

*Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court instead denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

**Due Process and Parole Revocation**

"[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). However, *Morrissey*, 408 U.S. at 489, requires that a state provide a parolee:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

## ANALYSIS

**Ground One**

Drago asserts that the Commission violated the Fifth Amendment and Fourteenth Amendment by placing him on conditional release a second time. (Doc. 1 at 5, 15–16) He contends that the Commission arbitrarily placed him a second time on conditional release,

7

which led to his subsequent revocation of that release and his return to prison. (Doc. 1 at 5) The Commission asserts that Drago failed to exhaust the claim. (Doc. 14 at 11) Drago contends that he raised the claim in a state petition for a writ of habeas corpus and appealed the denial of the claim in a state petition for a writ of certiorari. (Doc. 1 at 6–7) On appeal, Drago cited both the due process clause of the Fourteenth Amendment and federal constitutional cases. (Doc. 14-23 at 8–11) The Commission did not assert that Drago failed to properly preserve the federal constitutional component of his claim for review on appeal and instead briefed the merits of the issue. (Doc. 14-24 at 16–17) Because Drago both cited federal constitutional law and opinions reviewing federal constitutional law, he fairly presented the federal claim to the state court. *Reese*, 541 U.S. at 32. *Bennett v. Fortner*, 863 F.2d 804, 807–08 (11th Cir. 1989).[3]

The post-conviction court denied the claim as follows (Doc. 14-19 at 6–7) (state court record citations omitted):

> The Petitioner is currently incarcerated at the Taylor Correctional Institution for convictions arising from the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. In the instant petition, the Petitioner alleges his current detention, which is the result of the Petitioner's conditional release violation, is illegal because he was "statutorily ineligible for [a] second term of conditional release subsequent to [a] violation of the terms or conditions of his first conditional release." As relief, the Petitioner seeks "termination of conditional release and/or immediate release from detention." However, as explained below, this Court finds the Petitioner's claim to be legally meritless.
>
> Contrary to the Petitioner's assertions, section 947.13(1)(f), Florida Statutes, does not impose a one-term limit on the number of times an inmate can be conditionally released. *See, e.g.*, *Smith*

---

[3] In an earlier state habeas petition Drago raised a similar claim (Doc. 14-12 at 5–15), and the post-conviction court denied the claim on the merits (Doc. 14-14 at 4–16), but Drago failed to appeal. (Doc. 14-12 at 2)

*v. State*, 151 So. 3d 44, 45 (Fla. 1st DCA 2014) (inmate was conditionally released in 2002 and again in 2003); *Barber v. State*, 988 So. 2d 1170, 1175 (Fla. 4th DCA 2008) (inmate was released under conditional release supervision twice). Section 947.13(l)(f) states that:

> The commission shall have the powers and perform the duties of: [e]stablishing the terms and conditions of persons released on conditional release under section 947.1405, and determining subsequent ineligibility for conditional release due to a violation of the terms or conditions of conditional release and taking actions with respect to such a violation.

§ 947.13(l)(f), Florida Statutes. It is clear from the plain language of this subsection that this section simply empowers the Florida Commission on Offender Review to establish the terms and conditions of conditional release and to determine when it should be revoked upon a violation of those terms and conditions. Nothing in this subsection indicates that inmates are limited to one attempt at conditional release supervision. Accordingly, this Court finds the Petitioner's argument—that he was ineligible for a second term of conditional release pursuant to section 947.13(1)(f)—to be legally meritless. Moreover, it has long been held that inmates subject to conditional release supervision must serve one hundred percent of their prison sentence, whether in prison or subject to conditional release supervision. *See Evans v. Singletary*, 737 So. 2d 505, 507 (Fla. 1999) ("Inmate[s] . . . released due to gain time from a sentence that is eligible for Conditional Release . . . are placed on supervision for the amount of time equal to the gain time they have accrued. If they violate their supervision, gain time is forfeited and the inmate is returned to prison to continue serving the sentence(s)."). Here, the Petitioner does not claim that he has served his entire prison sentence day-for-day; thus, the Petitioner has not shown entitlement to immediate release.

Whether the Commission arbitrarily placed Drago a second time on conditional release is an issue of state law, and the state court's interpretation of state law receives deference in federal court. *Reaves v. Sec'y, Fla. Dep't Corrs.*, 717 F.3d 886, 903 (11th Cir. 2013) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11 (1975)).

The state court accurately quoted Section 947.13(1)(f), Florida Statutes, which authorizes the Commission to "determin[e] subsequent ineligibility for conditional release due to a violation of the terms or conditions of conditional release." Also, Section 947.146 establishes a Control Release Authority, comprised of members of the Commission, to identify which inmates are entitled to control release when the state prison system reaches 99 percent of its total capacity. The Control Release Authority is "sole[ly] responsib[le] for determining control release eligibility, establishing a control release date, and effectuating the release of a sufficient number of inmates to maintain the inmate population between 99 percent and 100 percent of total capacity." § 947.146(3), Fla. Stat. "Whenever the inmate population drops below 99 percent of total capacity and remains below 99 percent for 90 consecutive days without requiring the release of inmates under this section, all control release dates shall become void and no inmate shall be eligible for release under any previously established control release date." § 947.146(5), Fla. Stat. A revocation of control release does not preclude an inmate from qualifying for control release. § 947.146(3), Fla. Stat. (identifying which inmates are ineligible for control release).

After interviewing Drago, creating a release plan, and reviewing the nature and circumstances of his criminal offenses, the Commission in its broad discretion determined that Drago was entitled to conditional release a second time. (Doc. 14-7 at 2–4) Drago signed a form and agreed to abide by the terms and conditions of supervision. (Doc. 14-7 at 5–8) Because Florida law grants the Commission broad discretion to determine an inmate's eligibility for control release, the Commission appropriately released Drago a second time.

Drago contends that the Commission violated his right not to be released. Drago did not hold a right not to be released. *Ortiz v. Fla. Parole Comm'n*, 15 So. 3d 941, 943 (Fla. 3d

DCA 2009) ("Under section 947.1405, Florida Statutes (1989), release on conditional release is mandatory for inmates who qualify."). Even if Drago held a state-created right not to be released, the Commission presented Drago with a form that required his signature to confirm that he agreed to abide by the terms and conditions of supervision. (Doc. 14-7 at 5–8) When Drago violated the terms and conditions of his release, the Commission provided Drago notice and a hearing. (Doc. 14-9 at 2–9) Consequently, the Commission provided Drago constitutionally adequate process. *Morrissey*, 408 U.S. at 489; *Duncan v. Moore*, 754 So. 2d 708, 712 (Fla. 2000). *Accord DeKalb Stone, Inc. v. Cty. of DeKalb, Ga.*, 106 F.3d 956, 960 (11th Cir. 1997) ("[R]ights created by state law (*e.g.*, tort and employment law) are protected by procedural, not substantive, due process because substantive due process protects only rights created by the Constitution.").

Drago argues that the state statutes violate his due process rights because the statutes grant the Commission unfettered discretion to place him on conditional release and do not provide the Commission any guidelines when exercising that authority. (Doc. 23 at 1–5) He contends that the lack of guidelines results in "arbitrary lawless state action," which violates his constitutional rights. (Doc. 23 at 2)

Section 947.1405(9), Florida Statutes, provides: "The commission shall adopt rules pursuant to sections 120.536(1) and 120.54 necessary to implement the provisions of the Conditional Release Program Act." "The traditional concept of unlawful delegation of legislative authority by the United States Congress . . . is not based on the idea of due process of law in the Fifth Amendment (taken over and applied against the states in the Fourteenth Amendment), but on the constitutional separation of powers." *United Beverage Co. of So. Bend, Inc. v. Indiana Alcoholic Bev. Comm'n*, 760 F.2d 155, 157 (7th Cir. 1985) (string citations

11

omitted). "The provisions of the federal constitution which delineate the powers of the three branches of the federal government have no application to the balance of powers in Florida's system of government, which is established in the state constitution." *Pacheco v. Dugger*, 850 F.2d 1493, 1494 (11th Cir. 1988). *See also Gray v. State*, 791 So. 2d 560, 252 (Fla. 5th DCA 2001) (holding that Section 947.1405(6), Florida Statutes, which authorizes the Commission to place an inmate on conditional release does not violate the state constitution's separation of powers provision). Because Drago cites no clearly established federal law that the state court either ruled contrary to or unreasonably applied, he is not entitled to relief on federal habeas. 28 U.S.C. § 2254(d).

Ground One is **DENIED**.

**Ground Two**

Drago asserts that the Department of Corrections arbitrarily extended his maximum sentence expiration date in violation of the Fifth Amendment and Fourteenth Amendment. (Doc. 1 at 7–8, 17) Drago raised the claim in a petition for a writ of quo warranto (Doc. 27-2 at 6–8) and in a brief on appeal. (Doc. 27-19 at 7–12).[4]

The post-conviction court denied the claim as follows (Doc. 27-14 at 2–4) (state court record citations omitted):

> Mr. Drago was sentenced to 30 years in prison for an offense he committed in 1991. At that time, his maximum sentence expiration date was naturally a date in 2021—30 years after his offense. However, due to the accumulation of gain time, he was released early on a supervisory program known as conditional release on two separate occasions. He spent a significant amount of time on supervision during these two periods—close to a year

---

[4] In an earlier state habeas petition, Drago raised a similar claim (Doc. 14-12 at 5–15), and the post-conviction court denied the claim on the merits (Doc. 14-14 at 16–18), but Drago failed to appeal. (Doc. 14-12 at 2)

12

each—but violated its terms both times. As a result of those violations, Mr. Drago was taken back into custody, had his gain time revoked, and had the days he spent on supervision added on to his maximum sentence expiration date, pushing it into 2022.

Mr. Drago asks "by what authority" can the Department of Corrections extend his maximum sentence expiration date based on violations of conditional release. *Whiley v. Scott*, 79 So. 3d 702, 707 (Fla. 2011) ("The term quo warranto means by what authority, and the writ is the proper means for inquiring into whether a particular individual has improperly exercised a power or right derived from the State.") (internal quotation marks omitted). To answer his question, the Department derives this authority from Florida Statutes. Under section 947.1405(2)(b), Fla. Stat. (1991), inmates who have been "sentenced as a habitual or violent habitual offender" and are released early from their sentences, through gain time accrual or otherwise, are subject to conditional release. Mr. Drago was sentenced as a habitual offender.

If the former inmate violates the terms of their conditional release, the Department may "declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner." § 944.[28](1), Fla. Stat. (1991). And the Department "has broad authority . . . to either grant or deny a releasee credit for time spent on [c]onditional [r]elease when that release is revoked due to a violation of the terms and conditions of release." *Rivera v. Singletary*, 707 So. 2d 326, 327 (Fla. 1998).[2] This is, in part, because "[c]onditional [r]elease . . . has never been an early release program, but rather an additional post-prison supervision program for certain types of offenders that the legislature has determined to be in need of further supervision after release." *Id.* Nothing improper occurred in Mr. Drago's case when the Department decided to revoke his credit.[3]

[2] This case also discusses and rejects a textual argument that is remarkably similar to the one Mr. Drago raises regarding section 944.275(2)(c), Fla. Stat. (1991).

[3] Mr. Drago's two constitutional claims—separation of powers and due process—are reliant on the success of his quo warranto argument. Because that argument fails to persuade, so do these claims.

> But although the Court has answered the question raised in Mr. Drago's petition, it does not rule on that basis because this issue has been litigated by him before and resolved on the merits. Mr. Drago has challenged the Department's authority to revoke gain time and add days onto a maximum sentence expiration date three times before this petition. All three orders resolving the challenges found them meritless. The current label of 'quo warranto' is a poor disguise for his fourth attempt, and collateral estoppel bars the consideration of this petition.
>
> Mr. Drago's invocation of the manifest injustice exception to the application of this procedural bar is unavailing because the claim, as was previously discussed, is without merit. *See State v. McBride*, 848 So. 2d 287, 292 (Fla. 2003).

The post-conviction court denied the claim as barred by collateral estoppel (Doc. 27-14 at 4), and the state appellate court dismissed the appeal because Drago failed to pay the filing fee. (Doc. 27-26 at 2) However, the Department of Corrections fails to assert that the state court's dismissal based on a state procedural ground bars the claim from federal review (Docs. 17 at 12), and therefore waives that defense. *Smith v. Sec'y, Fla. Dep't Corrs.*, 572 F.3d 1327, 1340 (11th Cir. 2009) ("If . . . the petitioner did raise the claim in the state courts but not at the time or in the manner required by state procedural rules, the resulting procedural bar defense may be waived by the State's failure to assert it.") (citing *McNair v. Campbell*, 416 F.3d 1291, 1306 (11th Cir. 2005)).

Whether the Commission arbitrarily extended a sentence's maximum expiration date is an issue of state law, and the state court's interpretation of state law receives deference in federal court. *Reaves*, 717 F.3d at 903. A "maximum sentence expiration date" is "the date when the sentence or combined sentences imposed on a prisoner will expire." § 944.275(2)(a), Fla. Stat. Under state law, the Commission holds broad authority to grant or deny credit for time spent on conditional release after revocation of release. *Rivera v. Singletary*, 707 So. 2d

14

326, 327 (Fla. 1998) ("[T]he Commission has broad authority under sections 947.1405, 944.291(2) and especially section 947.141, to either grant or deny a releasee credit for time spent on Conditional Release when that release is revoked due to a violation of the terms and conditions of release.") (footnotes omitted).

On October 1, 2009, the Commission placed Drago on conditional release. (Doc. 14-3 at 4) At that time, his maximum sentence expiration date was January 8, 2021. (Doc. 14-3 at 2) On September 1, 2010, after Drago spent 334 days on conditional release, a police officer arrested Drago for violating the terms of his release. (Doc. 14-4 at 12) The Commission revoked Drago's conditional release and denied the award of credit for time spent on release. (Doc. 14-6 at 2) The Department of Corrections extended Drago's maximum sentence expiration date from January 8, 2021 to December 8, 2021 to account for the 334 days that he spent on conditional release.

On September 18, 2017, the Commission placed Drago on conditional release a second time. (Doc. 14-7 at 5) At that time, his maximum sentence expiration date was December 8, 2021. (Doc. 14-7 at 2) On August 21, 2018, after Drago spent 336 days on conditional release, a police officer requested Drago's extradition from South Carolina for violating the terms of his release. (Docs. 14-8 at 4 and 14-9 at 5) The Commission revoked Drago's conditional release and denied the award of credit for time spent on release. (Doc. 14-10 at 2) The Department of Corrections extended Drago's maximum sentence expiration date from December 8, 2021 to November 7, 2022 to account for the 336 days that he spent on conditional release (with credit for two days in jail in South Carolina). (Doc. 14-10 at 2) Drago's maximum sentence expiration date remains November 7, 2022.

Under *Rivera*, the Commission held the authority to deny Drago credit for time that he spent on conditional release. Because the Department of Corrections extended Drago's maximum sentence expiration date to account for that time on release, the Commission did not arbitrarily extend the date. Put another way, Drago had not served 30 years in prison because the time spent on conditional release is not time in prison. Thus, the extension of the expiration date of the sentence did not result in his serving more than 30 years in prison.

Drago cites no clearly established federal law that the state court either ruled contrary to or unreasonably applied. 28 U.S.C. § 2254(d). *Rodriguez v. Fla. Parole Comm'n*, 430 F. App'x 768, 770 (11th Cir. 2011) (citations and footnotes omitted) confirms that the denial of credit for time spent on conditional release does not violate federal law:

> While we have never decided whether a state Parole Commission's denial of credit for the time an inmate spent on conditional release violates federal law, we have rejected this argument in the context of federal parole. Addressing federal parole violations, the former Fifth Circuit rejected the double jeopardy argument, similar to the one pressed here, that when parole is revoked upon violation, the time spent on parole should count towards time served on a prisoner's sentence. The former Fifth Circuit explained that in federal parole, the "time spent on parole shall not diminish the sentence where a prisoner has violated his parole and is required to serve the remainder of his sentence." Moreover, our predecessor court has rejected the argument that it violates due process principles to require a parole violator to serve the remaining time on his sentence, even if that causes the prisoner's "incarceration [to extend] past the final expiration of the maximum sentence as established at the time of imposition."

Drago further argues that no state statute authorizes the Department of Corrections to extend a maximum sentence expiration date. (Doc. 23 at 7) He contends that Section 944.275(2), Florida Statutes, authorizes the Department to extend a maximum sentence expiration date only for an escapee or parole violator. (Doc. 23 at 7) A state appellate court

16

rejected this argument based on an interpretation of state statutes, and a federal court defers to a state court on this issue of state law. *Rivera*, 707 So. 2d at 326–27. *Fleming v. State*, 697 So. 2d 1322, 1322–23 (Fla. 5th DCA 1997).

Ground Two is **DENIED**.

**Ground Three**

Drago asserts that the Department of Corrections' extension of his maximum sentence release date violates double jeopardy. (Doc. 1 at 8, 18) He contends that the forfeiture of time spent on conditional release amounts to multiple punishment for the same crime. (Doc. 1 at 18) Drago contends that he exhausted this claim by raising the claim in a petition for a writ of quo warranto and on appeal. (Doc. 1 at 9) Even though the state court record shows that Drago failed to raise the claim in both the petition and his brief on appeal (Docs. 27-2 at 2–15, 27-13 at 2–15, and 27-19 at 2–26), the Department of Corrections expressly waives exhaustion as a defense. (Docs. 17 at 12) Consequently, the Court reviews the claim on the merits. 28 U.S.C. § 2254(b)(3); *Vazquez v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 964, 966 (11th Cir. 2016).

Because both state and federal courts conclude that no double jeopardy violation arises from the denial of credit for time spent on conditional release, the claim is meritless. *Rodriguez*, 430 F. App'x at 770 (citing *Clark v. Blackwell*, 374 F.2d 952 (5th Cir. 1967)[5]). *Duncan*, 754 So. 2d at 711 ("[R]eturning a Conditional Release violator to prison to continue serving his or her sentence without credit for the prior awarded gain time does not constitute a violation of double jeopardy."). *Accord Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986) ("Jonas

---

[5] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that opinions by the Fifth Circuit issued on or before September 30, 1981 bind the Eleventh Circuit).

claims that he was subjected to double jeopardy because his presumptive parole release date was vacated and a new one set following his escape. The double jeopardy clause does not apply to parole revocation proceedings, *Garcia v. United States*, 769 F.2d 697, 700 (11th Cir. 1985), and for the same reasons it does not apply to vacation of a presumptive parole release date.")); *United States v. Newton*, 698 F.2d 770, 772 (5th Cir. 1983) ("Finally, it is noted that this Circuit and other circuits have subscribed to the view that a parole violator forfeits his time on parole when he is convicted of a new offense committed subsequent to his release on parole.") (citing opinions by the Fifth Circuit, Seventh Circuit, and Tenth Circuit).

Ground Three is **DENIED**.

Accordingly, it is **ORDERED** that Drago's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Drago and **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Drago neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on February 17, 2022.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE